## Case No. 2,714.

CHURCH et al. v. SHELTON.

[2 Curt. 271.] [1]

Circuit Court, D. Massachusetts. May Term, 1855.

COLLUSIVE SPOLIATION — SUIT BY SHIPPER — ADMIRALTY JURISDICTION — EVIDENCE — PROCEEDINGS IN OTHER SUIT.

1. Where a master fraudulently concerted with wreckers to strand his vessel and they came to his relief. and the libellant as owner of the cargo paid a large sum of money for salvage. it was held that the admiralty had jurisdiction of a suit in personam, against the owners. founded on the contract made by the master as their agent, by the bill of lading. to con-

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

vey the merchandise safely, dangers of the seas excepted.
[Cited in The A. M. Bliss. Case No. 274; The Electron, 48 Fed. 690.]

2. Ordinarily a libel filed by a party to another suit. cannot be given in evidence against him as his confession. But if he brought the suit as a trustee, and recovered, the cestuis que trust may put the whole record in evidence, to show the recovery and the title on which it rested.
[Cited in Richardson v. Winsor, Case No. 11,-795.]

[Appeal from the district court of the United States for the district of Massachusetts.]

F. C. Loring, for libellant.
Bell & Goodrich, contra.

CURTIS, Circuit Justice. This is an appeal from a decree of the district court, sitting in admiralty. [Unreported.] The libel alleges that in August, 1850, the libellant caused to be shipped on board the bark Empress, Leet, master, belonging to the respondents, then lying at Havana, in the island of Cuba, 1,588 boxes of sugar, of the value of forty thousand dollars, to be carried to Boston, and delivered to the libellant, for an agreed freight. That bills of lading in the usual form were signed by the master making the sugars deliverable. dangers of the seas excepted, to the libellant or his assigns. That in the course of the passage from Havana to Boston. the vessel got ashore on one of the reefs in the neighborhood of Key West, was relieved by wreckers, and went into that port in distress. The master there referred to arbitrators the question of the amount of salvage; and the libellant. upon information of what was thus awarded as due from him, paid the sum of six thousand two hundred dollars. as and for his contributory share of the salvage compensation and its attendant necessary expenses. Thus far, the averments of the libel are admitted by the answer. The libel further alleges that the stranding of the bark was done by design of the master. in barratrous concert with the persons who came to her relief as wreckers, and with the purpose of sharing between the master and the wreckers, the sum which might be awarded as a salvage compensation. That all this was unknown to the libellant, until after he had finally paid his alleged contributory share, and had received his property. That the respondents also were ignorant of the truth, until after the money had been contributed and paid over. to satisfy the salvage claim; but that having ascertained the fraud. and that some portion of the money which they, in behalf of all concerned had paid, towards the claim for salvage, was still in the hands of the agents in Key West, who had received the same for the salvors. the respondents instituted a suit in the court of admiralty in Key West. in their own names, and upon allegations of the fraud above described. recovered the money. part of which had been contributed by the respondents. [Case No. 2,713.] The answer admits that

the one of the respondents who was the managing owner of the bark, gave a power of attorney to a person in Key West to bring a suit to recover back so much of the money paid for salvage compensation, as was then in the hands of third persons there; and that when a recovery had been had, the same managing owner gave another power of attorney to receive the avails of the suit. But it denies that the bark was run on shore by design, and alleges it was by a peril of the sea.

The libellant has offered in evidence, an exemplification of the record of the suit in admiralty at Key West, brought by the respondents, first, as evidence of their confessions of the facts therein alleged, among which is the barratrous stranding of the bark by the master, in concert with the wreckers,—and second, that the decree being in rem, is conclusive evidence of the facts which it finds, and that it finds, though not in terms, by necessary implication, all the essential facts alleged in the libel.

Two principal questions have been argued at the bar. The first is whether this court, as a court of admiralty has jurisdiction. The second is, whether the record of the suit at Key West is admissible in evidence in this case. The first question has been argued as if this were a suit to recover back from the respondents money which they had received at Key West, by reason of the suit there. Viewed solely in that aspect, it would be difficult to sustain the jurisdiction of the admiralty; for it would be only another form of an action for money had and received. But I think this not the correct view of the relations of these parties. The owners of this vessel are responsible for the contracts made by its master within the scope of his authority as such. It is not questioned that he was authorized to sign the bill of lading of these goods, promising to deliver them to the libellant. dangers of the seas only excepted. By this promise he bound the respondents. This promise was broken; for instead of delivering the merchandise to the libellant, he fraudulently caused it to come into the hands of wreckers, and concerted with them a pretended lien thereon for salvage; and caused the libellant to pay a large sum of money to get possession of his property, instead of keeping the promise in the bill of lading and delivering it to him free from any such claim. That the contract contained in the bill of lading was broken, if the allegations in the libel are true, is clear. That the libellant has, without fault on his part, and only through the barratrous conduct of the respondents' master. suffered damage to the amount he has paid in ignorance of the facts, to relieve his property from a supposed lien for salvage, is also clear. And there can be no doubt. since the decision of the supreme court of the United States in New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, that the admiralty has jurisdiction of such a

contract of affreightment, in personam, as well as in rem. Having jurisdiction over the entire contract, it will proceed to inquire into all its breaches, and all the damages suffered thereby, however peculiar they may be, and whatever issues they may involve. Upon the question of the admissibility of the exemplification of the record of the suit at Key West, it has already been stated, that it is admitted in the answer, that the suit was instituted under a power of attorney executed by one of the respondents, who was the managing owner of the bark. And it appears by the record, that the object of the suit was. to recover a sum of money which had been paid over to certain agents of the alleged salvors, by the respondents, and remained in their hands undistributed; that the principal alleged salvor became a party to the proceeding, and a recovery was had, the court taking jurisdiction in the admiralty, upon the ground, as is stated, that it was a case of collusive spoliation, which was a marine tort, and that the money in the hands of the agent of the asserted salvors. was substituted for the property saved, and might be followed by a proceeding in rem, as the property itself could be; and that it is also admitted in the answer, that the same managing owner. after a decree in favor of the owners, gave another power of attorney to receive the money from the registry of the court.

The question whether a bill in equity, or a libel in the admiralty, can be used in evidence as a confession by the party filing it, of the particular facts stated therein, has been the subject of much doubt. Mr. Phillips, though he admits there is a conflict of decisions, inclines to the opinion the evidence ought to be received. 1 Phil. Ev. 371; 2 Phil. Ev. 28. Mr. Greenleaf says it is admissible, though very feeble evidence, so far as it may be taken as the suggestion of counsel. 1 Greenl. Ev. 225; 3 Greenl. Ev. 263. Mr. Daniell. though he does not consider it evidence at law. declares it is so in equity. 2 Daniell, Ch. Pr. 976. On the other hand, Mr. Gurley (Eq. Ev.. 2d Ed., 426) denies that the statements of fact in a bill can be used against the complainant as confessions.

In Boileau v. Rutlin, 2 Exch. 664, decided in 1848, the court of exchequer. after very careful examination of all the previous authorities. at law and in equity, in England and Ireland, came to the decision that a bill in chancery is not evidence of the truth of the facts stated in it, as against the party in whose name it is filed, even though his priority be shown; but is only admissible to show that a suit was instituted, and the subject-matter of it. I consider this decision to be in conformity with the weight of authority in this country. The American cases are collected by Cowen & Hill (volume 4, p. 48). More recent decisions are, Adams v. McMillan, 7 Port. [Ala.] 73; Durden v. Cleveland. 4 Ala. 225; Isaac's Lessee v. Clarke, 2 Gill, 1. But though I do not think

this record is admissible merely as evidence of the confessions of the respondents, there is another ground upon which it may be competent evidence. The libellant was the freighter, the respondents the owners, of a vessel, which met with what was believed to be, a general average loss. The managing owner saw to its adjustment, and collected from the respondent his contributory share for the purpose of paying it over. The libellant now alleges, among other things, that the respondents did not finally part with this money. That they brought a suit, arrested the money, tried their title to it, upon the ground that the claim, out of which the general average contribution grew, was a fraud, got a decree in rem, and authorized their agent to receive the money, or some part of it. If this be true, the libellant was the equitable owner of at least a part of what was thus recovered, and may, undoubtedly, show its recovery, and the title upon which the recovery was had. For this purpose, all the authorities agree the record would be admissible. And it is wholly immaterial for this purpose, whether the court had jurisdiction or not. The pertinency of the evidence, or its validity, does not depend on the validity of the decree of the court. If the respondents had made a claim to this money in pais, upon the same ground, and obtained it, their acts and the declarations accompanying them, and the receipt of the money, might be shown. Here, also, it is competent to prove that they received the money under a claim of title, which made the libellant interested in what was recovered; and as the claim was made, and the recovery had, in a court, which, de facto, took jurisdiction, the production of a copy of its record, accompanied by evidence, aliunde, of the power given by the respondents to receive the money under the decree, is competent proof of the claim made, its nature and grounds, and the recovery had. I am strongly inclined to the opinion, also, that the court at Key West had jurisdiction; and that its decree has the usual legitimate operation of decrees in rem. But I have not thought it necessary to examine the question, for the reasons drawn from the relations of these parties to each other and to the subject-matter of the suit. This evidence being admissible, has a pretty strong tendency to support the allegation of the libel that there was a fraudulent stranding of the vessel by concert between the master and wreckers. And the case is entirely bare of evidence to oppose this allegation. Neither the master, nor any one from on board of the vessel, nor any salvor, or other person, is examined by the respondents, and no suggestion of any reason, why some of these are not produced.

By consent of parties the libellant has, in this court, amended his libel, so as to allege, that some of the sugars which arrived, were damaged by stranding. It was also agreed in the district court, by a written stipulation on the record, that the decree there, which had been made for the libellant, should be for a nominal sum, and that instead of referring the cause to an assessor, that the amount should be increased or diminished here as might be found just. Let the case be referred to an assessor to ascertain the amount of damage, including the damage done to the sugars, by the stranding alleged in the libel, or by bad storage, if any, and all moneys paid by the libellant to the respondents to relieve the goods from an asserted claim for salvage compensation, making to the respondents all just allowances.