## THE WASCO.

### MELLQUIST v. THE WASCO et al.

(District Court, D. Washington, N. D. Dec. 9, 1892.)

No. 479.

1. CARRIERS—WHO ARE PASSENGERS—NEGLIGENCE.
 One who, after boarding a steamer, learns that a certain landing where he intends to stop is off the steamer's route, and that he must pay extra fare in order to stop there, and who declines to do so, but does not change his purpose of taking passage, is a passenger from the time he goes on board, and as such can hold the steamer responsible for negligence whereby he is injured, although he does not prepay his fare or purchase a ticket, it being the custom for the purser to collect fares on board.

2. SAME—DEFECTIVE APPLIANCES—NEGLIGENCE OF EMPLOYES.
 A passenger on a steamer, while on the stairway from the main deck to the cabin deck, was injured by the fall of a heavy lantern, caused by the breaking of a halyard by which it was being hoisted to its place. The cause of such breaking did not appear. *Held*, that the injury was caused by a defect in the appliances, or by the negligence of the men in charge of the lantern, and that the steamer was liable therefor in an action in rem.

3. ADMIRALTY—VEXATIOUS ARREST—LOSS OF BUSINESS.
 Damages should not be awarded to the claimants of a vessel for an injury to her business by an arrest at a point on her route far from her owner's residence, and at a time when her detention over Sunday necessarily follows, unless there is proof of malice or bad faith on the part of the libelant. The Adolph, 5 Fed. Rep. 114; Kemp v. Brown, 43 Fed. Rep. 391; The Alex Gibson, 44 Fed. Rep. 374, followed.

4. SAME—PLEADING—SET-OFF.
 The proof of such an arrest, without any foundation in the pleadings for a crossdemand or set-off, should not decrease the amount of the libelant's recovery.

In Admiralty. Suit in rem by J. A. Mellquist against the passenger steamer Wasco, to recover damages for a personal injury to libelant while a passenger, caused by negligence. Findings and decree for the libelant.

P. P. Carroll and J. C. McFadden, for libelant.

E. M. Carr and Harold Preston, for claimants.

HANFORD, District Judge. The evidence shows that the libelant, a traveling salesman, went on board of the Wasco at New Whatcom the morning of December 30, 1891. The steamer was then running as a carrier of passengers and freight, on the route from Seattle to New Whatcom via Anacortes and other intermediate places, and was about to depart on her regular trip from New Whatcom via said intermediate places to Seattle. The libelant's intention was to visit Samish, Anacortes, and La Conner during his trip, and, upon going on board, inquired if he could be landed at Samish, and was informed that Samish was off the steamer's route, and that she would go there only under a special arrangement whereby the additional cost to her would be paid. He declined to pay extra fare, but did not change his purpose of taking passage on said trip. Prepayment of fare or the purchase of a passage ticket was not exacted, it being the custom for the purser to collect fare from those on board during the time of making passages. From these facts I conclude that the libelant, from the time of going on board the steamer, was a passenger, and entitled to hold the steamer responsible for the due fulfillment of its obligations as a common carrier of passengers for hire. The steamer has a stairway leading from the forward part of her main deck to her cabin deck, and, immediately after going on board, the libelant was upon said stairway, going either from the main deck to the cabin or in the opposite direction, and while he was there the steamer's masthead light, a lantern weighing between 9 and 10 pounds, was being hoisted to its position on the mast, and, by the breaking of the halyard, it fell, striking the libelant on the scapula of his left shoulder. The blow caused severe pain, and produced a contused wound, in consequence of which the libelant was for a time disabled from attending to his business, and incurred expense for medical treatment. The injury, however, was not dangerous in character, nor permanent. The testimony fails to disclose the cause of the accident, but it could not have happened if the halyard and appliances for suspending the light had been sound, of sufficient strength and proper construction, and there had been no negligence on the part of the officers and men employed on the steamer in the performance of their duties in connection with said light.

A carrier of passengers is, in law, bound to exercise a high degree of care for the safety of travelers, and any failure to provide sound equipments and appliances of sufficient strength and proper construction, or to exercise due care in the use thereof, is such negligence as will entitle a passenger who may suffer an injury in consequence thereof to damages; and an injury to a passenger on board a passenger ship, happening in consequence of negligence on the part of the owner, officers, or mariners of the vessel, is both a breach of the contract for transportation, and a tort, entitling the injured passenger to compensation and to a lien therefor upon the vessel. The City of Panama, 101 U. S. 462. The question in the case most difficult to decide is as to the amount which will be fair compensation to the

libelant. He complains of severe and protracted suffering, and pretends that his injury is permanent. The only evidence in the case to corroborate the libelant's testimony is that of his wife, physicians employed by him, and a few of his friends, whose testimony, however, is in most respects a mere repetition of his own complainings and statements regarding his sufferings and injuries, with the addition of their opinions as to the genuineness and truth of the statements which he has made to them of his suffering and consequent disability to work since the happening of the injury. His attempt has been to show to the court that in consequence of the injury his body is deformed, so that his shoulders are not of the same height; that he has lost entirely the use of his left arm and hand; that he constantly suffers severe pain in his left shoulder and chest; that his lungs are affected; and that he is so entirely disabled as to be unable to remove his coat or change his clothing without assistance. In my opinion, this attempt is a failure. There are many indications that the case has been overdone, and that the libelant is trying to magnify a comparatively trifling injury into a serious and permanent disability, for the purpose of unjustly extorting a large sum as his damages. The evidence was taken six months after the happening of the injury, and if the libelant had during that time been wholly deprived of the use of his arm, as he pretends, the fact could be proved by more reliable evidence than his own statements. The softening of the muscles and wasting of the arm itself would, if the facts are as the libelant represents, give physical and positive evidence of such facts. The physical appearances, as shown by the testimony of three reputable physicians, who examined the libelant in the month of July, are as follows: There is but a slight difference in the measurements of the libelant's two arms. The muscles of the left arm are firm, having no appearance of atrophy. That the libelant can raise, extend, and bend his left arm, and make all the movements of which a left arm in its normal condition is ordinarily capable. His right and left lungs are equally sound, and there is no indication of any localized ailment about his shoulder, spine, or chest, and no apparent cause or necessity for the drooping position in which he carries his left shoulder, as testified to by his witnesses. Two of the physicians who examined him testified that, in their opinion, the libelant has at times since the injury feigned pains and disabilities, in the presence of others, for the mere purpose of manufacturing evidence to enhance his damages in this case, and in that opinion I concur. It is now nearly six months since the evidence was taken, and a physical examination of the libelant at this time would go far towards confirming or contradicting his assertions in regard to his injuries and disabilities made in July; and if he can show, by submitting to such examination, that my opinion is erroneous, an opportunity will be afforded him for so doing, before I sign the decree. As the facts now appear from the evidence, I consider that the sum of $150 will reasonably and sufficiently compensate the libelant for the injury actually sustained, and award him that sum, with costs.

On the part of the claimants, evidence was introduced to prove that the libelant caused the steamer to be arrested at the Whatcom end of

her route, instead of at Seattle, where her owners reside, after business hours on Saturday evening, whereby she was detained over Sunday; that by said detention she sustained a considerable loss; and that, in making the arrest at said time and place, the process of the court was used to unnecessarily and vexatiously interfere with the business of the vessel. On this ground it is urged that no damages should be awarded to the libelant. This claim I cannot allow, for the reason that there is no foundation in the pleadings to support a cross demand or set-off; and I will say further that the authorities seem to have settled this to be the rule: that, even with proper pleadings, damages will not be awarded for an injury to the business of a vessel in consequence of a suit in rem, without proof of malice or bad faith. Henry, Adm. Jur. & Proc. p. 337; The Adolph, 5 Fed. Rep. 114; Kemp v. Brown, 43 Fed. Rep. 391; The Alex Gibson, 44 Fed. Rep. 374.