### ARTINANO v. W. R. GRACE & CO.

(District Court, E. D. Virginia. February 9, 1923.)

1. **Judgment ⬩184—Demurrer to notice of motion for judgment admits facts well pleaded.**

   In an action begun by the filing of notice of motion for judgment, defendant's demurrer thereto admits the truth of all the facts properly pleaded in the notice of motion.

2. **Admiralty ⬩48—Test of liability for wrongfully libeling steamer stated.**

   Liability for wrongfully libeling vessel by mistake for a different vessel depends on whether or not the action was so unwarrantably brought, or brought with so little color or foundation, as to imply malice, or that gross negligence which is equivalent thereto.

3. **Admiralty ⬩48—Libeling of vessel on claim against another vessel of same name held such negligence as warranted recovery.**

   Where defendant, having a claim against a French sailing vessel, with auxiliary engines and built of wood, growing out of a charter of such vessel and the loading thereon of freight of great value, libeled a Spanish steamship of the same name, which was built of steel and totally different in design, construction, and appearance, it was guilty of such negligence as will support the recovery of actual damages.

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by Ricardo Ortiz Artinano against W. R. Grace & Co. On demurrer to the motion for judgment. Demurrer overruled.

Baird, White & Lanning, of Norfolk, Va. (Edward R. Baird, Jr., and R. Clarence Dozier, both of Norfolk, Va., of counsel), for plaintiff.

Bigham, Englar & Jones, of New York City, and Hughes, Little & Seawell, of Norfolk, Va. (Leon T. Seawell, of Norfolk, Va., of counsel), for defendant.

GRONER, District Judge. This is an action at law for the recovery of damages alleged to have been sustained as the result of the illegal arrest, in admiralty proceedings, by the defendant, of the steamship Consuelo, belonging to the plaintiff. The action was begun by the filing of a notice of motion for judgment, to which the defendant demurs on the ground that no cause of action is sufficiently shown. The notice charges that on July 29, 1921, the Spanish steamship Consuelo, belonging to the plaintiff, was then lying in Hampton Roads; that on the day mentioned the defendant wrongfully, carelessly, and negligently filed in this court a libel in rem against the steamship for the recovery of $65,000, and caused an attachment to be issued against the ship, as a result of which she was arrested and taken into possession by the marshal and held until the 8th of August following, when she was voluntarily released and the proceedings voluntarily dismissed; that as a result of this wrongful detention damages were suffered to the amount claimed by reason of the loss of her charter. The amended notice of motion sets out that the proceeding in admiralty grew out of a charter party entered into between the defendant and the French High Commission for the hire of a French steamer—a sister ship of the steamship Noyon—named Rheims, which name had later been changed to Consuelo; that plaintiff's vessel was a Spanish steamship of steel construction, flying the Spanish flag, 342 feet in length, 47 feet in width, and 25 feet in depth, with machinery amidships; and that the French steamer intended to be arrested and attached in the libel proceeding was a wooden steamer with auxiliary equipment, schooner rigged, machinery aft, and 250 feet in length, 44 feet in width, and 22 feet in depth.

[1] The demurrer, of course, admits the truth of all the facts properly pleaded in the notice of motion, and from this it will be seen that the ground of negligence charged is that the defendant, in its pursuit of a French wooden auxiliary vessel of 250 feet, seized and detained a Spanish steel steamship of 350 feet; the position of the plaintiff here being that this constituted such gross negligence as in law to imply malice.

On behalf of the defendant, it is insisted that a party who, in good faith and without malice, in a proceeding in admiralty libels a vessel and fails in his suit, is not responsible ex delicto, and is not liable even to the extent of actual damages which, by reason of his groundless action, his adversary may have sustained. The following cases are cited as in point: The Adolph (D. C.) 5 Fed. 114; The Scandinavia

(D. C.) 38 Fed. 41; Kemp v. Brown (D. C.) 43 Fed. 391; The Alex Gibson (D. C.) 44 Fed. 371; Gow v. Brauer Steamship Co. (D. C.) 113 Fed. 672; The Alcalde (D. C.) 132 Fed. 576; The Amiral Cecille (D. C.) 134 Fed. 673; The Wasco (D. C.) 53 Fed. 546; Watt v. Cargo of Lumber, 161 Fed. 104, 88 C. C. A. 268; The Evangelismos, 12 Moore, P. C. 357 (14 English Reprint, 945).

In The Adolph, the District Court for .the Southern District of New York declined to release a vessel, or to require bond pending appeal from a decision dismissing the libel, and is not in point, except that it is there announced as a principle of admiralty that damages for the arrest of a vessel in an admiralty cause will not be awarded, unless the arrest of the vessel is mala fide, or the result of such gross negligence as amounts to bad faith.

The case of The Scandinavia grew out of a controversy between the consignee of a cargo of iron and the vessel in which it.was transported as to the correct amount of a freight bill. A libel and cross-libel were filed; the owner of the vessel claiming the right to demand payment of the freight before delivery, and the consignee declining to pay until the correct weight of the shipment was determined. Unnecessary detention of the vessel resulted, and, following the rule adopted in The Adolph, supra, the court held that no damages for detention while in custody could be given, in the absence of proof of bad faith.

In the case of Kemp v. Brown, decided by Judge Billings in the District Court for the Eastern District of Louisiana, the seizure of the vessel grew out of the belief on the part of the libelant that certain drafts drawn by the master of the vessel were for necessary disbursements in a foreign port, and carried a lien, and he libeled the vessel. Later it developed that the master had no need of the funds at the time the drafts were drawn, but had been supplied by the owners with funds sufficient to make all necessary disbursements, and the libel was thereupon dismissed, and the vessel discharged. The court, in passing upon the question of whether actual damages might be recovered against a libelant, who, in good faith and without malice, libels a vessel, but fails in his suit, held the rule to be that enunciated in Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116:

"That advice of counsel, and an honest belief on the part of libelant that he was using rightful remedies, exempts him from a suit for a wrong."

The Gibson Case arose, in the Northern District of Washington, out of a controversy between the vessel and the charterer as to the stevedore to be employed to load the vessel, thus delaying the loading. The charterer thereupon libeled the vessel, alleging loss by a decline in the price of the wheat which he was loading, caused by the delay in loading. The vessel's owner filed a cross-libel to recover for the same delay, and also for damages for the time the ship was detained after being arrested by the marshal under the original libel. On the latter ground the court held the vessel without remedy, stating the rule to be that no damages are allowable under such circumstances, unless "there is bad faith or deceit practiced in suing out the writ."

In the Gow Case, which also arose in the Southern District of New York, the controversy was between the steamship and the charterer. A libel was filed against the vessel by the charterer for breach of charter party and for delay in a foreign port. The court held, as a matter of fact, that the libel was not filed in good faith, that the arrest of the steamer was obtained by a suppression of the facts, and that, under such circumstances, damages were recoverable.

In The Alcalde, the master of the vessel obtained advances from a bank, which made the advances in the belief that they were necessary for the proper disbursements of the vessel. A libel was filed by the bank to recover the money so advanced. The claimant of the vessel filed a cross-libel for damages caused by the detention of the vessel. It was held that, the advances not being for necessaries, no lien existed, and on the cross-libel it was held that libelant, having acted in good faith and under advice of counsel, was not liable.

The Amiral Cecille was a collision case, and a libel and cross-libel were filed. Ultimately both vessels were found equally at fault, and the cross-libel, in which damages for detention were claimed, was dismissed upon the ground of justifiable cause.

The case of The Wasco involves a libel for personal injuries to a passenger. The vessel was held liable for the injury, and the claim of the vessel that the award should be reduced, or damages awarded over against the libelant, for the arrest of the vessel after business hours at a place other than that of the residence of her owner, was held without merit, on the ground that the pleadings did not support a cross-demand or set-off.

In the Case of the Cargo of Lumber, decided by the Circuit Court of Appeals, Second Circuit, the vessel was chartered to deliver a cargo from Mobile to New York. The master, claiming 7 days' demurrage during loading, refused to sign a clean bill of lading. The charterer declined to accept one indorsed with the master's claim for demurrage, and libeled the vessel. Subsequently the vessel, being released by agreement, proceeded to New York, where the master libeled the cargo, claiming, not only the 7 days' demurrage, but damages for the delay of the vessel while in custody. The court allowed the first claim as to $4^2/_9$ days, but refused to allow any demurrage for the time the vessel was under arrest, saying "that the dispute between the master and the shipper was about demurrage, and that they were both wrong," and that, under such circumstances, it could not be said that there was bad faith or malice, and without either no claim for damages for detention while under arrest in a libel properly begun could be awarded.

It will be observed that in all of the cases above referred to there was an existing controversy between the parties litigant, to settle which, in each instance, a decision of the court was necessary, and while the applicable rule is stated to be that damages for the arrest and detention of a vessel are not allowable unless malice, bad faith, or, as was said in The Adolph, supra, such gross negligence as amounts to bad faith, are shown, the facts admitted upon the demurrer here are so entirely unlike those existing in any of the cases decided that

286 F.—45

it may be readily seen, I think, that the cases are easily distinguishable. The case in which the facts more nearly parallel those of the case at bar is the English case of The Evangelismos, supra, in which there was a collision between an anchored and a moving vessel in the River Thames. As soon as the vessels were clear, the moving vessel sailed off, but anchored some distance away. A ship's boat with a crew from the anchored vessel was sent to watch the stranger, and continued in the immediate vicinity until daylight, when an effort was made to board her, which was frustrated, and the stranger again disappeared. The following day the Evangelismos was found in dock not far away; her appearance coincided with the strange vessel, which had been in collision with the anchored vessel the day before; she was identified as being the vessel which had been followed by the small boat immediately after the collision; she showed signs of the damage which it was observed had been sustained in the collision; and, believing that she was the identical vessel, a libel was filed, and she was arrested and remained in custody nearly two months, her owners being foreigners and having no funds or credit in England through which to obtain her release. As in the instant case, she was under charter to carry a cargo of coal, which was lost by her detention. In the trial which was subsequently had, Dr. Lushington, who heard the case, considering that the burden of proof as to the identity of the vessel doing the damage was upon the party proceeding, announced that it had not been sufficiently proved, and dismissed the libel against the Evangelismos. Application was then made on behalf of the Evangelismos, against the owners of the other vessel, for the loss sustained to the Evangelismos in consequence of her arrest and detention. Recovery on this ground was denied, the court holding that there had been no bad faith in the proceeding. On appeal to the High Court of Admiralty, the decision was sustained, and the following announced as the test for recovery in such a case:

"Is there or is there not, reason to say that the action was so unwarrantably brought, or brought with so little color, or so little foundation, that it rather implies malice on the part of plaintiff, or that gross negligence which is equivalent to it?"

[2, 3] The answer to the query thus propounded seems to me to be the criterion upon which to determine liability in cases like that now under consideration. There is nothing, in my opinion, to the contrary in Stewart v. Sonneborn, supra. Applying, therefore, the test to the record as it is made on this demurrer, the question is: Was there such gross negligence in the arrest of the Spanish steamship Consuelo, in the admiralty proceedings instituted by the defendant, as amounts in law to malice? The pleadings show that the libelant in that action had a claim against a French sailing vessel with auxiliary engines, built of wood, 250 feet long, and then known as the Consuelo, ex Rheims. Mistakenly, they caused the arrest of a steel steamship, so totally different in design, construction, and appearance as to afford immediate notice that a mistake in identity had been made. The only similarity, so far as the record now discloses, between the vessel

sought and the vessel arrested, is that both were named Consuelo. To hold that this in itself is sufficient to answer the rule of good faith would be to put a premium upon negligence, and to offer the possibility of confusion and loss to shipping, which, in my opinion, would seem to be unthinkable. While in the instant case the character of the parties and of their counsel forecloses in the negative the suggestion of actual bad faith, the admitted facts, on the other hand, coupled with the necessary presumption that libelant must, in the nature of things, have known the character and description of vessel which it had chartered, and on board of which it had loaded freight of great value, make its action in this case, in the seizure of a totally different character and description of vessel and her detention in a foreign port for a long period, an act of such negligence as, when properly proved, will entitle the plaintiff to the recovery of actual damages.

The demurrer should therefore be, and is, overruled.