Maple **APPLEWHAITE** et al.,
Libellants,

v.

S. S. **SUNPRINCESS** et al.,
Respondents.

Civ. A. No. 1150–55.

United States District Court
D. New Jersey.

Jan. 13, 1956.

**770**

Shafter & Shafter, Herbert J. Kaplow, New York City, Jerome Yesko, Paterson, N. J., for libellants.

Steelman, Lafferty & Rowe, Richard F. McMahon, Jr., Newark, N. J., Edwin K. Reid, New York City, of counsel, for respondent, Saguenay Terminals, Ltd.

MEANEY, District Judge.

Libellants are the representatives and survivors of ten seamen who lost their lives while serving as crewmen aboard the "S. S. Geologist" when that ship collided with the "S. S. Sunprincess" on the high seas. Saguenay Terminals, Ltd., a foreign corporation, alleged not to be doing business in New Jersey, was, apparently, bareboat charterer of the "S. S. Sunprincess."

This action was instituted, with Saguenay as one of the respondents, by serving the master of the "M/S Vivita" with a citation in personam with a writ of foreign attachment and with a libel in personam praying for a writ of attachment. The complaint alleges that Saguenay is the owner of the "Vivita" but there is no dispute at this time that Saguenay was merely a time charterer of the vessel, the owner being Limited Company Uglands Ownery, Fjere, a Norwegian Corporation. The goods on board the vessel were not owned by Saguenay. They were being carried by Saguenay under what might be termed subcharter arrangements with third parties.

Saguenay, appearing specially to contest the jurisdiction of the court, obtained on December 21, 1955, an order to show cause (1) why an order should not be entered vacating the writ of attachment; (2) why an order should not be entered holding libellants and their proctors liable for loss, damages, expenses and attorneys' fees; and (3) why an order should not be entered restraining any suit by libellants in personam by writ of foreign attachment until disposition of this application. Hearing was had on January 9, 1956.

Admiralty Rule 2, 28 U.S.C.A., provides that mesne process in suits in personam shall be by monition in the nature of summons or by simple warrant of arrest in the nature of a capias; "in either case with a clause therein to attach his goods and chattels, or credits and effects in the hands of the garnishees named in the libel * * * if said respondent shall not be found in the district."

■■ The question to be determined at this juncture is whether the motor ship "Vivita" may properly be attached under this rule. A similar situation was involved in the case of McGahern v. Koppers Coal Co., 3 Cir., 1940, 108 F.2d 652. There it was argued that a charterer is *pro hac vice* owner of the vessel chartered and the vessel is to be treated as the charterer's property for the purposes of the rule. But the court in that case held that while a charterer is for many purposes treated as owner *pro hac vice,* no title passes to the charterer and the vessel is not subject to attachment under Rule 2. The charterer has merely the right to possess and control the vessel for a limited period and this special property is not the equivalent of title such as would subject it to attachment or to execution for a judgment rendered against the charterer in personam.

There was no attempt in this case to do more than attach the vessel "Vivita", and under the authority of McGahern v. Koppers Coal Co., supra, the writ of attachment must be vacated.

But even if we assumed that the Marshal's intention was to attach the interest of the charterer herein, this court is of the opinion that such interest is not subject to attachment. The only asset available for judicial sale arising out of the circumstances in the case at bar would be the contract rights arising out of the charter. The very nature of a charter agreement is a manifestation of the intent of the parties that it shall not be assignable. The relationship between the parties to the charter indicates (to paraphrase the familiar expression of Lord Denman) the existence of the right to the benefit anticipated from the character, credit, and substance of the party with whom the contract is made. Humble v. Hunter, 12 Q.B. 310, 317. "Rights arising out of contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided." (Pollock on Contracts, 4th Ed. 425). Approval is specifically given to these pronouncements in Arkansas Valley Smelting Co. v. Belden Min. Co., 127 U.S. 379 at pages 387, 388, 8 S.Ct. 1308, 32 L.Ed. 246. It follows that the charter agreement is not a proper subject for an attachment.

■ Respondents herein ask that libellants and their proctors be held liable for loss, damages, expenses and attorneys' fees. Since it does not appear that the libel was filed maliciously, or in bad faith, or with such negligence as would constitute bad faith, such damages will not be allowed. Walsh Transp. Co. v. Iroquois Transit Corp., D.C.S.D.N.Y. 1926, 16 F.2d 475; Artinano v. W. R. Grace & Co., D.C.E.D.Va.1923, 286 F. 702; 2 Benedict on Admiralty, Sec. 304, pp. 393, 394.

However, costs will be assessed against libellants.

Let an order in conformity herewith be submitted.