CALIFORNIA NAVIGATION & IMPROVEMENT CO. v. STOCKTON
MILLING CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 14, 1911.)

No. 1,895.

**1. SHIPPING (§ 140\*)—CONTRACT—CONSTRUCTION—LIBELANT'S RISK.**

Where a contract for the shipment of flour provided that, in consideration of a reduced freight rate, the flour was to be carried in open barges at libelant's risk, such provision did not relieve respondent from liability for loss and injury to a part of the cargo, resulting from respondent's negligent failure, for 16 hours after discovering that the barge on which the flour was being loaded was in a leaking condition, to take steps to save the cargo from injury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 493; Dec. Dig. § 140.\*]

**2. SHIPPING (§ 123\*)—INJURY TO AND LOSS OF CARGO—BAD STOWAGE.**

The rule that a ship and its owners are exempt from liability for damages by bad stowage performed by stevedores selected by the owner of the cargo does not apply, where the loss was not caused by bad stowage or mischievous acts in handling the cargo, but by respondent's negligent failure to safeguard the same after it had been placed aboard and stowed.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 454; Dec. Dig. § 123.\*]

Liabilities of vessel owners for loss or injury from improper stowage, see note to The Gualala, 102 C. C. A. 553.]

**3. SHIPPING (§ 120\*)—INJURY TO CARGO—NEGLIGENCE.**

Respondent contracted to transport flour for libelant in open barges and to load the same, but at libelant's request employed a warehouse company to do the loading. After a barge had been partly loaded, and while it was lying unattended, one end grounded at night at low tide, causing seams to open and the barge to leak. This was promptly discovered, and an unsuccessful attempt made to pump out the barge; but no effort was made for 16 hours to save or safeguard the flour that had been loaded, after which the barge sank, causing loss and injury to the flour. *Held*, that respondent, having no other representative in control of the barge, was liable for the negligence of the servants of the warehouse company in failing to exercise ordinary care to preserve the flour while in its custody for transportation.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 440; Dec. Dig. § 120.\*]

Appeal from the District Court of the United States for the Northern District of California.

Libel in admiralty by the Stockton Milling Company and another against the California Navigation & Improvement Company to recover for injuries to a cargo of flour. From a decree awarding damages (165 Fed. 356), respondent appeals. Affirmed.

Thomas H. Breeze and De Witt Clary, for appellant.

Charles Page, Edward J. McCutchen, Samuel Knight, and Ira A. Campbell, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HANFORD, District Judge.

HANFORD, District Judge. With all surplusage and useless contentions of the litigants expurgated from this case, there remains to

be considered and decided only the simple question whether the loss complained of is a consequence of negligence, chargeable to the appellant. The admitted and indisputable facts are that the libelants, owners of a lot of flour stored in a warehouse at South Vallejo, made an oral contract with a transportation company (the appellant) to move the flour to Stockton, for compensation at an agreed rate, which was less than the usual freight rate; a reduction being made in consideration of a condition of the contract that the flour should be carried in open barges and at the libelant's risk. While a barge furnished for the service by the carrier was being loaded at South Vallejo, the ebbing of the tide left it bow aground and stern afloat, so that an undue proportion of the weight of the cargo, as it was put on board, was borne by the end having no other support than the water. In that situation the vessel was strained, as a piece of timber would be, if placed so that part of its length rested upon a solid support and the projecting end were weighted. The straining caused seams to open, through which water flowed into the barge. The men employed in loading discovered that the barge was taking in water before 3 o'clock p. m. of the second loading day. Nothing was done to change the position of the barge, and the strain upon her was increased by continuance of loading, until the end of working hours that day. An unsuccessful attempt was made to get an engine to pump the water out, and three men worked all night pumping; but the water came in faster than they could pump it out. At 8 o'clock the next morning the stern sank, and thereby a considerable part of the flour on board went into the water and was lost, and the part saved was damaged. Until within one hour before the sinking, no effort was made to save the flour on the barge by unloading it. It was the business of the warehouse company to move the flour from the place where it was stored to the loading place on the wharf alongside of the barge. On a request from the libelants, and for the mutual advantage of all concerned, the appellant employed the warehouse company to deliver the flour on the barge and stow it, instead of dumping it on the wharf.

The averments in the libel, that the appellant was employed to transport the flour in its character as a common carrier, and that the barge was unseaworthy, are superfluous, because another sufficient ground supports the decree of the District Court awarding damages to the libelants. Negligence of the appellant in failing to exercise due care for the safety and preservation of that part of the cargo which had been delivered into its custody is charged in the libel as a cause of the loss and ground of liability, and that charge is well sustained by proof of the facts recited in the foregoing narrative. No timely effort was made to save the flour, either by easing the strain on the barge, or by unloading, although more than 16 hours intervened between the time of discovering the leaking condition of the barge and the time of her sinking, and no excuse whatever for that negligence has been suggested.

The libelant is not shielded from responsibility for the consequences of its negligence by the agreement of the libelant to assume risks.

That agreement, according to the evidence, was vague and uncertain, and no ultra liberal construction of the contract to shift responsibility from a wrongdoer deserves judicial sanction. By its undertaking the appellant became obligated to exercise ordinary care and diligence in handling the libelant's property and to furnish seaworthy barges and competent servants, and certainly risk of loss by its failure to perform the contract in good faith was not contemplated as one of the risks assumed by the libelants.

It has been held in a number of decisions that a ship and its owners are exempt from liability for damages resulting from bad stowage, performed by stevedores selected by the owner of the cargo, and on that line of defense the following cases have been cited: Westray v. Miletus, Fed. Cas. No. 17,461, affirmed in 5 Blatchf. 335, Fed. Cas. No. 9,545; Blaikie v. Stembridge, 6 C. B. (N. S.) 899. The principle affirmed by those decisions, however, is not applicable to the facts of this case, for the reason that the loss was not caused by bad stowage, nor by mischievous acts in handling the flour. The duty of safeguarding the flour, after it had been placed upon the barge and stowed, was incidental to the carrier's undertaking, and distinct from the work which the libelants requested that party to intrust to the warehouse company. Having no other representative in control of the barge, the appellant must be condemned for absolute failure to provide for its safety, or else held responsible for the warehouse company's mismanagement as its agent. The respective duties and obligations of the parties furnish the criterion by which to determine whether negligence of an employé is to be imputed to one or the other of adverse parties, where each has a beneficial interest in the employé's work.

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it, nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other, we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking." Standard Oil Co. v. Anderson, 212 U. S. 221, 29 Sup. Ct. 254, 53 L. Ed. 480.

In this case the negligence causing damage was in failing to perform a duty which the appellant was obligated by its contract to perform, viz., the duty to exercise ordinary care for the preservation of

the flour while in its custody for transportation. For that breach of its contract the appellant is legally bound to render compensation, as decreed by the District Court.

Affirmed.