VITELLI et al. v. CUNARD S. S. CO., Limited.

(Circuit Court of Appeals, Second Circuit. February 10, 1913.)

No. 156.

SHIPPING (§ 126*)—INJURY TO CARGO—LIABILITY OF CARRIER AS WAREHOUSE-MAN.

A steamship company, which, on discharging goods of libelant which were subject to injury by. water, left them in an exposed position without proper covering, so that they were subjected to a 36-hour rain and seriously damaged, *held* liable for the injury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 461–464; Dec. Dig. § 126.*]

Appeal from the District Court of the United States for the Southern District of New York; George C. Holt, Judge.

Suit in admiralty by Francis Vitelli and another against the Cunard Steamship Company, Limited. Decree for libelants, and respondent appeals. Affirmed.

Lord, Day & Lord, of New York City (H. B. Potter and L. H. Beers, both of New York City, of counsel), for appellant.

Ullo, Ruebsamen & Yuzzolino, of New York City (A. M. Yuzzolino, of New York City, of counsel), for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The ship arrived April 9, 1909, and began to discharge on Saturday, April 10th, at 7:30 a. m. She discharged defendant's goods on that day, and on April 12th and 13th. The shedded pier at which she lay was congested with freight, so libelant's goods were placed on what is called the "Farm," an open place adjoining the street and running between piers. The weather continued clear until about 3 p. m. on the 13th, when it began to rain lightly, at intervals until about 9 p. m., when a steady rain set in which continued for 36 hours. In consequence the goods in question were badly damaged by water.

The argument was mainly concerned with the obligation of the steamship as a common carrier, and the respective rights and duties of ship and consignee. In the view we take of the facts, it seems unnecessary to go into this branch of the cause, inasmuch as respondent concedes that it at least was under the obligation of a warehouseman to exercise reasonable care in protecting the goods. Knowing the goods were in an exposed position, it was manifestly the duty of the respondent as soon as the weather became threatening, or at least as soon as rain began to fall, to protect them with such waterproof covers as would shield them from damage. Witnesses called by respondent testified that they were so protected by waterproof tarpaulins, securely battened down. The carman of libelants testified that they were covered, not by tarpaulins, but by several pieces of canvas, pervious to water if exposed for a sufficient length of time, overlapping each other, but disarranged, presumably by the wind, so that a portion of the pile of goods was entirely uncovered. We are satisfied

that his story is the correct one, because, if they had been covered by waterproof tarpaulins properly battened down, we cannot see how the goods could have been so thoroughly water-soaked as these undoubtedly were.

The decree is affirmed, with interest and costs.