## THE OGEECHEE.

### (District Court, E. D. Pennsylvania. January 17, 1918.)

### No. 40.

1. SHIPPING ⬳141(1)—DAMAGE TO CARGO—LIABILITY OF VESSEL.
    Under a bill of lading providing that lighterage in discharging the cargo shall be at the "risk and expense of the cargo," any loss or damage suffered by the cargo during the lighterage without fault on the part of the ship must be borne by the cargo; but it does not relieve the ship from liability for such loss or damage through the culpable negligence of the ship or her owner.

2. SHIPPING ⬳126—DAMAGE TO CARGO—LIABILITY OF VESSEL.
    Respondent steamship received a shipment of phosphate rock, to be delivered at libelant's wharf in Philadelphia. As the vessel could not reach the wharf, owing to insufficient depth of water, it was agreed that the cargo should be lightered, lighterage to be "at the risk and expense of the cargo." Libelant was to unload the lighters and be paid for the service. On arrival, the vessel employed two open or deck lighters, on which it discharged the cargo. The second lighter reached the wharf too late on Saturday to be unloaded that day, and during the delay the cargo, which was insufficiently protected, was damaged by rain. *Held*, that the carrier's responsibility did not end until proper delivery of the cargo on the wharf, and that in failing to provide lighters or coverings that would protect it from injury until that time it was culpably negligent, and was liable for the damage.

3. ADMIRALTY ⬳59—PLEADING.
    To prevent surprise and promote the due administration of justice, parties are held in admiralty, as in other branches of jurisprudence, to the positions respectively taken by them in their pleadings.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit by the General Manufacturing Company against the steamship Ogeechee. Decree for libelant.

J. Frank Staley and Lewis, Adler & Laws, all of Philadelphia, Pa., for libelant.

M. Hampton Todd, of Philadelphia, Pa., for respondent.

BRADFORD, District Judge. The General Manufacturing Company has libeled the steamship Ogeechee for the recovery of damages for injuries to a cargo of phosphate rock shipped on her at Tampa, Florida, for delivery in Philadelphia. It is admitted in the pleadings, among other things, that the libelant is engaged in the business of manufacturing phosphoric acid, fertilizers, and other products; that the Ogeechee is an American vessel hailing from the port of New York, and at the time thereinafter mentioned was owned, chartered, operated or controlled by the Southern Steamship Company, engaged in the business of a common carrier for hire between Philadelphia and Tampa, and other southern ports; that the libelant on or about November 24, 1914, caused to be delivered to her at Tampa 996 gross tons of crude dry phosphate rock in good order and condition, to be conveyed by her as a common carrier to Philadelphia; that the Ogeechee accepted the shipment of phosphate rock as such common carrier, and by reason of the premises became liable and was bound to properly load, stow and care for the same, and make proper delivery thereof at Philadelphia to the libelant as the true and lawful owner thereof in the same good order and condition as received. The libel alleges that the Ogeechee, not regarding her duty as a common carrier, did not safely carry and deliver to the libelant at Philadelphia her cargo of phosphate rock in the same good order and condition as when received; but that when the cargo was delivered to the libelant a large portion of it was wet and greatly damaged, for which damage no compensation has been made. The respondent denies liability on the part of the Ogeechee and avers in substance, among other things, that it was agreed between the libelant and the respondent that upon the arrival of the Ogeechee at Philadelphia her cargo was to be unloaded from her and placed on lighters which were thereupon to be towed to the wharf of the libelant at Greenwich Point, Philadelphia, where the libelant was to unload the phosphate rock from the lighters to its wharf, and to be allowed for such unloading 18 cents per ton.

It appears that on or shortly after the arrival of the Ogeechee at Philadelphia at the beginning of December, 1914, she unloaded her cargo of 996 tons of phosphate rock to and upon the two lighters Howard and Belgrade, placing upon the Howard on Thursday, December 3, upwards of 500 tons, and the balance of her cargo upon the Belgrade on the next following day. The Howard with its load was on Friday, December 4, towed and tied to the libelant's wharf at Greenwich, where the phosphate rock was placed upon the wharf, the unloading of the Howard being completed about 4 p. m. on Saturday. The libelant makes no claim for damages with respect to the phosphate rock carried by the Howard. The Belgrade with its load reached the vicinity of the wharf about 11 a. m. Saturday, when the representative of the

libelant directed that the Belgrade be tied up alongside of the Howard which was being unloaded at the time. The unloading of the latter vessel having, as before stated, been completed about 4 p. m., it appears from the testimony of Ericsson, who at that time was in charge of the Belgrade, that he asked Haines, the libelant's superintendent, "Can't I pull my boat in after the Howard?" that Haines replied, "No, never mind. Maybe you might put it in there tomorrow, and be ready for Monday morning," and that he, Ericsson, then said, "That is all right." In fact the libelant did not proceed with the unloading of the Belgrade until Tuesday, December 8, and did not complete the same until the next following day, the load of phosphate rock having in the meantime been greatly damaged by rain.

[1] It is admitted that the Ogeechee was to make "proper delivery" of her cargo to the libelant at Philadelphia, but what would constitute such delivery was not expressly stated. The depth of water at the libelant's pier in Philadelphia not being sufficient to allow a vessel of the draft of the Ogeechee to unload her cargo directly on the pier, employment of lighters was necessary. By the agreement between the parties as disclosed by the bill of lading and the charter-party, it was provided that lighterage should be "at the risk and expense of the cargo." This provision contemplated that any loss or damage suffered by the cargo during the lighterage without fault on the part of the respondent should be borne by the cargo; but not that the steamship should be exempt from liability for such loss or damage to the cargo through culpable negligence of her owner. The Seguranca (D. C.) 68 Fed. 1014.

[2] For the purpose of having the cargo transferred from the Ogeechee to the libelant's wharf the respondent furnished the Howard and Belgrade. These vessels were not "house" or "hold" lighters, but "deck" lighters, unsuitable for the carriage of a "dry cargo," such as phosphate rock, in stormy or rainy weather, unless provided with sufficient tarpaulins or other waterproof covering properly arranged and adjusted about the cargo for its thorough protection against water. The libelant had no part in selecting or providing the lighters or furnishing or adjusting the tarpaulins over the phosphate rock placed upon them. All this was attended to by the respondent. And it appears from the evidence beyond all reasonable question that with respect to the Belgrade, to say nothing of the Howard, the tarpaulins intended for the protection of the deck load, amounting to about 450 tons, were insufficient and carelessly and improperly placed over and insecurely attached to the lighter. For any injury to the phosphate rock resulting prior to the completion of the contract of carriage, from these faults or from the negligent use of a deck lighter instead of a house or hold lighter, the Ogeechee should be held liable in damages. The cargo of phosphate rock was in good order and condition when shipped on the Ogeechee at Tampa, and it is not disputed that it was in good order and condition on and after its arrival at Philadelphia, and until after it was placed on the lighters. Whatever damage it suffered from rain occurred after that time. It appears from the weather report for Philadelphia that from midnight to midnight no rain fell on Friday, December 4, and that from midnight to

midnight there was a rain-fall on succeeding days as follows: Saturday, December 5, .33 of an inch, Sunday, December 6, .36 of an inch, Monday, December 7, 3.71 inches, Tuesday, December 8, .51 of an inch, and Wednesday, December 9, .08 of an inch.

Subject to the qualification that lighterage should be at the risk and expense of the cargo, the Ogeechee was bound, unless prevented by the specified dangers of the sea, not only for the carriage of the cargo from Tampa to Philadelphia, but for its delivery in good order and condition on libelant's wharf, in the absence of stipulation or settled usage to the contrary. The Tangier, 23 How. 28, 39, 16 L. Ed. 412. And what was thus required by the general law of shipping was in contemplation of the parties; for while the freight for the voyage was fixed at $2.15 per ton of 2240 pounds, an allowance of 18 cents per ton was to be made to the libelant or owner of the cargo for unloading it, recognizing that the stipulated freight for the carriage of the cargo to Philadelphia included its delivery on the libelant's pier. This accords with the direct evidence on the point, the acting general manager of the libelant testifying to the effect that the freight to be paid the carrier, subject to an allowance or deduction for stevedoring, required delivery of the Ogeechee's cargo on the libelant's wharf. There is nothing in the provison that lighterage should be at the risk and expense of the cargo to relieve the respondent from liability for failure to deliver it in good order and condition on the wharf unless prevented from so doing by loss or damage during the lighterage not occurring through its fault. The respondent not only claims that it had completed its contract of carriage so far as the phosphate rock on the Belgrade is concerned when that vessel was made fast to the libelant's wharf, but contends that it was the duty of the libelant under the arrangement by which it was to be allowed 18 cents a ton for unloading the lighters, to unload the Belgrade promptly and take such other and further steps as should be necessary for the protection of its load of phosphate rock from loss or damage, and that having failed to discharge this duty the libelant is responsible for the damage subsequently resulting from rain. This contention, while plausible, I deem unsound. It appears that on Saturday afternoon at the time the above mentioned conversation between Ericsson and Haines occurred, rain was either falling or immediately impending. It was highly important to the libelant that the phosphate rock on the Belgrade should not be damaged by exposure to rain during the unloading. Nightfall was nearly at hand. It had taken from eight to nine hours to load the Belgrade and it was impossible to complete the unloading before the following day, and that day was Sunday. Ericsson took a reasonable view of the situation; for when Haines suggested that the Belgrade be placed in a position to be ready for the work of unloading on Monday morning there was no protest by the former—no indication by him to Haines that the libelant would at its own peril omit to proceed forthwith with the work of stevedoring. On the contrary Ericsson in charge of the Belgrade and in that capacity representing the respondent assented to the suggestion in the words, "That is all right." On Monday, December 7, the time appointed for the unload-

ing of the Belgrade, there was the very unusual rainfall of 3.71 inches, and there can be no question on the evidence that an overwhelming proportion of the damage to the phosphate rock on that vessel occurred on that day. Had the respondent provided lighters of proper construction for the carriage of a dry cargo or sufficient tarpaulins, properly adjusted and fastened over and about the phosphate rock, it is to be assumed as against the respondent as a wrongdoer that the cargo of neither of the lighters would have been damaged. The evidence discloses nothing to relieve the Ogeechee from liability for the damage done through the wetting of the cargo prior to its delivery on the libelant's wharf.

[3] It is contended that, notwithstanding the admission to the contrary in the answer, the Ogeechee did not receive or carry her cargo of phosphate rock as a common carrier, but only as an ordinary bailee for hire. In the absence of an amendment to the answer, for which no application was made, the respondent is precluded by its admission from taking a position so inconsistent with its pleading. The libelant was notified by the answer of what it was called upon to. meet, and it had a right in the absence of an amendment to rely in preparing for trial upon the admission of the common carrier liability of the steamship. To prevent surprise and promote the due administration of justice parties are held in admiralty as in other branches of jurisprudence to the positions respectively taken by them in their pleadings. The contention of the respondent in this connection cannot be sustained. Indeed, in view of the facts established by the evidence I deem it unimportant to the decision of this case whether the Ogeechee undertook the carriage of its cargo as a common carrier or only as an ordinary bailee for hire; for in either case there was such culpable negligence on the part of the respondent as to make her liable for the resulting damage. Vitelli v. Cunard S. S. Co., 203 Fed. 697, 122 C. C. A. 81.

The libelant is entitled to a decree adjudging the Ogeechee in fault and referring the case to a Commissioner for the assessment of the damage, on the evidence heretofore adduced and such further evidence as shall be taken before him on that subject.

A decree in accordance with this opinion may be prepared and submitted.