UNITED STATES v. STANDARD OIL CO. OF CALIFORNIA.

No. 11126.

Circuit Court of Appeals, Ninth Circuit.

June 22, 1946.

Charles H. Carr, U. S. Atty., Robert E. Wright, Asst. U. S. Atty., Lillick, Geary, McHose & Adams, and Augustus F. Mack, Jr., all of Los Angeles, Cal., for appellant.

Pillsbury, Madison & Sutro, of San Francisco, Cal., Lawler, Felix & Hall and John M. Hall, all of Los Angeles, Cal., and Felix T. Smith and John A. Sutro, both of San Francisco, Cal., for appellee.

Before DENMAN, BONE and ORR, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree in admiralty holding the United States liable for the contamination of a portion of appellee's cargo of gasoline and oil in its commercial tanker, chartered by appellee for her full capacity on a single voyage from San Pedro and El Segundo in the State of California to Point Wells in the State of Washington, and for the damage to appellee's gasoline and fuel oil in two shore tanks into which appellant pumped the mixtures. This the court held was due to a negligent breach of appellant's obligation to make the vessel seaworthy as to the equipment of her cross-over valves in the loading and discharging lines, which unseaworthiness caused the contamination and damage in the process of the discharge.

The appellant admits the existence of jurisdiction in personam over it, stating that "The case was initiated, tried and handled throughout under the Suits in Admiralty Act, 46 U.S.C.A. 741–752, which Act provides specifically for libels in personam against the United States in cases of this character."

There is abundant evidence that a portion of the cargo in one of the vessel's tanks, consisting of Standard diesel fur-

nace oil, was commingled with Standard gasoline, carried in another tank, in the course of the discharge because of a negligent failure of appellant's obligation, contractual in nature, to make the vessel seaworthy as to her valves, and we concur in the district court's finding in that regard.

Appellant claims that since it is agreed that it was not a common carrier of the cargo, it is absolved from liability for the commingling by a provision in the charter party excusing the vessel "for any consequences arising out of shipping more than one grade of cargo."

■■ It is elementary that charter party provisions attempting to excuse a private carrier's negligent breach of its contract must be strictly construed, a fortiori negligent failure to perform its obligation to make the vessel seaworthy.[1] Under such a rule of strict construction, we construe the words "consequences arising out of *shipping* more than one grade of cargo" as not including the consequences of negligence in failing to make the vessel seaworthy for such shipping, nor the consequences arising from negligently *discharging* the oil and gasoline shipped.

■ This maritime court of the Pacific Coast takes notice that, in the large and long-established marine transportation of oil and gasoline for the great consumption of such petroleum products in the States of California, Oregon and Washington, the oil and gasoline are pumped from the tanker's holds to large permanent tanks holding like petroleum products.

■ In the instant case the appellant, with its vessel's pumps, drove the contaminated gasoline into one of appellee's shore tanks containing uncontaminated gasoline—damaging the latter by its contamination with the oil and gasoline mixture. Likewise it pumped contaminated fuel oil into another tank containing uncontaminated oil. The district court held that in addition to the damage to the oil and gasoline damaged on the tanker, appellant was liable for the damage to the gasoline and oil in the two shore tanks into which its pumps drove the contaminated mixture. We agree with the district court's finding that such negligent breach of the contract by such pumping was the proximate cause of the damage to the gasoline and the oil in the tanks for which it was intended.

■ Appellant claims that it is protected from liability for such negligent driving of the contaminated mixture directly from the vessel into the receiving tanks by a provision in the charter party that the cargo "shall be pumped out of the Vessel at the expense of the Vessel, but at the risk and peril of the Vessel only so far as the Vessel's permanent hose connections, where delivery of the cargo shall be taken by the Charterer or its Consignee." Its contention is that what damage was caused by the pumps' impulse in the contaminated cargo as it was driven from the ship's hose through the pipes connecting with the receiving tanks, is a mere tort and hence, since it occurred ashore, is beyond the admiralty jurisdiction. Appellant relies upon such cases as The Plymouth, 3 Wall. 20, 70 U.S. 20, 18 L.Ed. 125, where the destruction by fire of buildings on shore, caused by a fire negligently started on the ship, was held not of admiralty cognizance.

We do not agree. Insofar as the agreement for the termination of the contract of carriage seeks to avoid liability for damage caused by negligent breach of the contract for a pumping beyond the end of the ship's hose, we construe it as controlled by the negligence avoidance cases, supra.

The oil and gasoline were received by the tanker in good order and condition. The tanker's bill of lading agreed to deliver them in that condition. That agreement was broken by the delivery in bad order and condition. The libel stated the facts showing the proximate cause of the

---

[1] The Framlington Court, 5 Cir., 69 F. 2d 300, 303, certiorari denied 292 U.S. 561, 54 S.Ct. 860, 78 L.Ed. 1500; California Nav. & Improvement Co. v. Stockton Mill Co., 9 Cir., 184 F. 369; Colton v. New York & Cuba Mail S. S. Co., 2 Cir., 27 F.2d 671; The Ogeechee, D.C., 248 F. 803.

damage to the oil and gasoline in the receiving tanks was the breach of the contract. The issue in contract was decided by the court below as in contract and not in tort.

■ The fact that the breach of a maritime contract proximately causes damage ashore does not place the liability for damage beyond the jurisdiction of an admiralty court. The Supreme Court has held that damages may be recovered in admiralty for breach of a contract to repair a vessel, a large part of which was to be performed after she was drawn on land on a marine railway, stating that it is the maritime character of the contract which is determinative of the jurisdiction. North Pacific S. S. Co. v. Hall Bros. Co., 249 U.S. 119, 127, 128, 39 S.Ct. 221, 63 L.Ed. 510.

So also a shipowner's obligation for maintenance and cure covers injuries while ashore, received on premises not belonging to the shipowner. Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; The Betsy Ross, 9 Cir., 145 F.2d 688, 689. In Union Fish Co. v. Erickson, 9 Cir., 235 F. 385, 386, 387, this court cites and relies upon the following holding of the Fifth Circuit in Keyser v. Blue Star S. S. Co., Ltd., 5 Cir., 91 F. 267: "Where a provision of a charter party for a foreign vessel, though not in itself maritime in character, is so connected with the other stipulations therein as to render it an essential part of the contract, and it appears probable that without it the contract would not have been entered into by the owners, a court of admiralty has jurisdiction of an action for an alleged breach of such a provision," and also quotes and relies upon Judge Curtis' language in Church v. Shelton, 2 Curt. 271, 274, Fed.Cas.No.2,714, that the contract being maritime, the admiralty "will proceed to inquire into all its breaches, and all the damages suffered thereby, however peculiar they may be, and whatever issues they may involve."

■ Appellant claims that appellee had warning that the diesel oil the ship pumped into its diesel oil tank was contaminated and that it owed the obligation to the vessel to stop the pumping. We think there is ample evidence from which the district court could have inferred that appellee did not have such knowledge and hence we affirm its finding and decision adverse to appellant.

■ Under the amended libel the appellee sought damages under the following agreement of the charter party: "34. Breach.—Damages for breach of this Charter shall include all provable damages, and all costs of suit and attorney fees incurred in any action hereunder."

Appellant argues that because Section 743 of the Suits in Admiralty Act provides that the court may include costs and 4% interest on damages awarded, it has no power to award as damages the breach of a contract to pay attorney fees.

We do not agree. Section 743 provides that "Such suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties * * *." There is no question that private parties make such contracts respecting the services of proctors and advocates in maritime proceedings. The provision for a 4% interest means no more than that it may be added to damages awarded under such a covenant in the charter party, just as it would to damages arising from breach of its other covenants.

■ Appellant would have us diminish the damages with respect to the attorney fees. There is testimony to support the amount. The district judge, experienced in admiralty matters, awarded it with better knowledge than we have as to what exertions and ability of the proctors were called forth in pressing the litigation before him. We affirm the award.

The decree in its entirety is affirmed.